McCOURTNEY et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. July 9, 1923.)

No. 6286.

1. **Injunction ⬥⟾229—Court issuing held to have jurisdiction of charge of criminal contempt based on violation in another division of the district.**

   Court issuing injunction restraining interference with employees during strike, etc., had jurisdiction to punish violation as criminal contempt, though committed in another division of the same district.

2. **Criminal law ⬥⟾113—Criminal contempts not "crimes or offenses" within statute as to venue.**

   Criminal contempts are not "crimes or offenses" within Judicial Code, § 53 (Comp. St. § 1035), requiring all prosecutions for crimes or offenses to be had within division of district where they were committed, but are only quasi crimes or offenses.

3. **Injunction ⬥⟾228—That violator not a striker immaterial where he aided others with knowledge of injunction.**

   That one participating in assault on railway company's employee was not a striker was immaterial if with full knowledge of injunction restraining interference with, or use of violence towards, employees, he aided others who were strikers in committing the assault.

4. **Injunction ⬥⟾230(I)—Evidence held to make question for jury as to whether taxi driver participated in assault by strikers.**

   Evidence *held* to make question for jury as to whether taxi driver driving strikers to scene of an assault participated in the assault.

In Error to the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Barney McCourtney and others were convicted of contempt of court, and they bring error. Affirmed.

Clif. Langsdale, of Kansas City, Mo., for plaintiffs in error.

Charles C. Madison, U. S. Atty., of Kansas City, Mo. (Byron H. Coon, Asst. U. S. Atty., of Kansas City, Mo., on the brief), for the United States.

Before LEWIS and KENYON, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge. The plaintiffs in error on a trial to a jury were found guilty of contempt of court on an information charging a violation of an injunction granted by the District Court of the United States for the Western Division of the Western District of Missouri, in a cause pending in that court, entitled St. Louis San Francisco Railway Company, complainant, against International Association of Mach-

inists et al., defendants. The injunction contained provisions similar to those set out in No. 6285, Winkle et al. v. United States (C. C. A.) 291 Fed. 493, opinion filed this day, and need not be set out herein. The information charges that the respondents, plaintiffs in error, with full notice of the injunction and its provisions, and while it was in full force, did on August 6, 1922, in Thayer, Oregon county, state of Missouri, in the Western District of Missouri, commit the contempt in violation of the injunction, by stopping a number of employees of the said railway, named in the information, upon their going home from their work for said railway and by artifice inveigle said employees into an automobile, took them to a place remote, and unlawfully assaulted, beat, and bruised said employees of the railway company, by beating them on their naked backs with switches, and further threatened, abused, and applied to them vile and indecent epithets, with intent to frighten, intimidate, and coerce them and cause them to leave the employment of said railway company, with intent to disobey, resist, and violate the injunction decree of the court.

While there are a number of errors assigned, the only ones relied on in the brief and oral argument of counsel for plaintiffs in error are:

(1) That the court was without jurisdiction, as the alleged violation of the injunction was committed in another division of the district, viz. in the county of Oregon, state of Missouri, in the Southern Division of the Western District of Missouri, and that therefore the District Court for the Western Division of that district was without jurisdiction to try them in that division.

(2) That the evidence failed to establish that the respondent McCourtney took any part in the alleged violation of the injunction. The sufficiency of the evidence concerning the other plaintiffs in error is not questioned.

[1, 2] In Binkley v. United States, 282 Fed. 244, this court, in a contempt proceeding of a similar nature, in which Binkley had been found guilty of a violation of an injunction granted by the District Court for the Eastern District of Arkansas, the violation having been committed in the Western District of Arkansas, held, Judge Kenyon delivering the opinion of the court, all the judges concurring, that "the offense, if offense at all, was a contempt of the court of the Eastern District, even though the acts constituting the contempt took place in the Western District," and sustained the jurisdiction of the trial court. This case was followed by the Circuit Court of Appeals for the Fifth Circuit in McGibbony v. Lancaster, 286 Fed. 129.

Counsel ingeniously attempt to distinguish that case from the case at bar, contending that as the violation of the injunction in the instant case, if there was one, was in the same district, but in another division, the only court having jurisdiction of the cause is the court of the division in which the violation was committed, as section 53, Judicial Code (Comp. St. § 1035), provides that—

"All prosecutions for crimes or offenses shall be had within the division of such districts where the same were committed."

It is claimed that this proceeding being a criminal contempt, as distinguished from a civil contempt, the court erred in retaining jurisdic-

tion against the protests of the respondents; relying on Gompers v. United States, 233 U. S. 604, 610, 34 Sup. Ct. 693, 58 L. Ed. 1115, Ann. Cas. 1915D, 1044, and Creekmore v. United States, 237 Fed. 743, 753, 150 C. C. A. 497, L. R. A. 1917C, 845, decided by this court.

It is true that in both of these cases the courts speak of such contempts as offenses, but strictly speaking they should be denominated as quasi crimes or offenses, or proceedings in the nature of a criminal proceeding. Middlebrook v. State, 43 Conn. 257, 21 Am. Rep. 650; Jones v. Mould, 151 Iowa, 599, 132 N. W. 45.

That they are not crimes or offenses within the meaning of the Sixth Amendment to the Constitution is conclusively apparent from the fact that prior to the enactment of the Clayton Act, 38 St. 730, 739, no parties charged with criminal contempt were entitled to a trial by jury. In re Debs, 158 U. S. 564, 595, 15 Sup. Ct. 900, 39 L. Ed. 1092. That act, section 22 (Comp. St. § 1245b), provides:

"In all cases within the purview of this act [referring to contempts arising in actions under that act] such trial may be by the court, or, upon demand of the accused, by a jury, * * * and such trial shall conform, as near as may be, to the practice in criminal cases prosecuted by indictment or upon information."

It will be noticed that the act does not require such a trial, to be conducted as a trial for a violation of a penal law, but "shall conform, as near as may be, to the practice in criminal cases." A party charged with a criminal contempt in disobeying an injunction not granted under that act is still not entitled, as a right, to a trial by jury.

In the Gompers Case the question before the court was whether a criminal contempt can be prosecuted after the expiration of three years of its commission, and it was held that, although there was no statute expressly limiting the period within which the prosecution for such a contempt must begin, still, as the statute of limitations bars criminal proceedings in three years, that limit should be adopted by analogy. It is true the court calls such a proceeding a crime, but courts must limit precedents to the facts in the particular case.

In the Creekmore Case this court used the same language, quoting from the Gompers Case, but the judgment of conviction, on a trial to the court without a jury, the sentence, which was confinement for one year and a day in the penitentiary, was upheld. If it was to be tried strictly as a criminal case, the court would have been compelled to reverse the judgment, for having been rendered without a trial by jury, as required by the Sixth Amendment to the Constitution, which is more comprehensive than the provision in section 22 of the Clayton Act.

This also applies to the Binkley Case, in which the jurisdiction of the trial court was involved. The jurisdictional question had in that case been properly raised in the trial court and assigned as error in this court.

In Ex parte Hudgings, 249 U. S. 378, 383, 39 Sup. Ct. 337, 339 (63 L. Ed. 656, 11 A. L. R. 333), the latest expression by the Supreme Court on contempts, the court said:

"Existing within the limits of and sanctioned by the Constitution, the power to punish for contempt committed in the presence of the court is not

controlled by the limitations, of the Constitution as to modes of accusation and methods of trial generally safeguarding the rights of the citizen."

That the court did not intend to limit the contempt to acts in the presence of the court is apparent from the decision in Toledo Newspaper Co. v. United States, 247 U. S. 402, 38 Sup. Ct. 560, 62 L. Ed. 1186, affirming the decision of the Circuit Court of Appeals, 237 Fed. 986, 991, 150 C. C. A. 636, where the contempt was committed by publication of articles in a newspaper; it not being shown that the publications were read by the judge or that the newspapers containing them were sold or distributed in the courthouse or its immediate vicinity.

In our opinion the court below had jurisdiction, it being the court whose decree had been flagrantly disregarded and violated by the respondents.

The other ground relied on for a reversal, which applies only to McCourtney, is that the court erred in denying his motion, made at the close of the evidence of the entire case, to direct a verdict of not guilty as to him.

[3] The fact that McCourtney was not a striker is immaterial, if with full knowledge of the injunction, and that was established beyond doubt, he aided others, who were enjoined, in the acts charged. Wellesly v. Mornington, 11 Beav. 180; Huttig Sash & Door Co. v. Fuelle (C. C.) 143 Fed. 363.

[4] To review all the evidence would serve no useful purpose, as it will settle no question of law. It is sufficient to call attention to the testimony of Leonard Carner and Clarence Carner. Leonard Carner, one of the railway employees whipped, testified that after he and the other employees with him had been taken out of the car they were in, they were searched and abused as scabs, for accepting employment from the railway company, while the strike was on, McCourtney being present. He testified that—

"They decided they were going to beat us up and then decided to leave it to Jim Johnson, and Preacher Jim Johnson and Barney McCourtney (the respondent), and they went off to decide. * * * They came back and somebody said: 'Get your switches boys.' * * * Fred Burch and Holmes Lindley whipped us."

He then testified how he and his brother were whipped after being compelled to bare their backs. Clarence Carner testified to the same effect, and that "the two Johnsons and McCourtney went off to decide whether they would whip us or not." Other witnesses testified to his presence with the others, who committed the assaults, which he also admitted. His testimony was to the effect that he was a taxi driver and had been engaged to drive the other respondents to the country, as they wanted to do a little picketing they told him, but that he took no part whatever in the beating or threats, but merely looked on. What he did do was a question of fact to be determined by the jury from the conflicting evidence.

The court in its charge instructed the jury:

"If you believe that McCourtney started out innocently and continued as a mere bystander, and what he did was not done with any purpose of assisting or abetting this outrage, then you will say so by your verdict. If you

believe the contrary, you will say he is guilty. The whole matter is left to your consideration with respect to him and the remaining defendants in this case."

The jury found him guilty, and the verdict is conclusive in this court.

The judgment against all the plaintiffs in error is affirmed.